**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

HIGHFIELDS CAPITAL I LP, HIGHFIELDS
CAPITAL II LP, and HIGHFIELDS CAPITAL III
LP,

        Plaintiffs,

        v.

BARRICK GOLD CORPORATION, AARON
REGENT, JAMIE SOKALSKY, AMMAR AL-
JOUNDI, PETER KINVER, IGOR GONZALES,
GEORGE POTTER and SYBIL VEENMAN,

        Defendants.

**Case No: 15 Civ. 8465 (RMB) (JCF)**

**ECF Case**

------------------------------------------------------------------x

BG LITIGATION RECOVERY I, LLC,

        Plaintiff,

        v.

BARRICK GOLD CORPORATION, AARON
REGENT, JAMIE SOKALSKY, PETER KINVER,
IGOR GONZALES, GEORGE POTTER and
SYBIL VEENMAN,

        Defendants.

**Case No: 15 Civ. 8457 (RMB) (JCF)**

**ECF Case**

------------------------------------------------------------------x

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)
FROM THE ONTARIO SUPERIOR COURT OF JUSTICE FOR ORAL
EXAMINATIONS (DEPOSITIONS) OF PETER MUNK, IVAN MULLANY, FEAZ
RAHIM, AND TED SZPARGALA AND FOR DOCUMENT EXCHANGE**

        The United States District Court for the Southern District of New York (the "Court")

presents its compliments to the Ontario Superior Court of Justice and respectfully requests

international judicial assistance to obtain testimonial and documentary evidence to be used in the

above-captioned civil proceedings pending before this Court, which is necessary in the interests

of justice.

## I.      REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE

### A.      Sender / The Requesting Judicial Authority

> The Honorable James C. Francis
> United States Magistrate Judge
> Southern District of New York
> 500 Pearl Street
> New York, NY 10007-1312
> United States of America

### B.      To the Appropriate Authority in Canada / The Receiving Judicial Authority

> Ontario Superior Court of Justice
> Toronto Courthouse
> 393 University Ave, 10th Floor
> Toronto, Ontario
> M5G 1E6
> Canada
> Tel.: (416) 326-4230
> Fax: (416) 327-9470

### C.      Person to Whom the Executed Request is to be Returned

> Lawrence M. Rolnick
> Marc B. Kramer
> Thomas E. Redburn, Jr.
> Michael J. Hampson
> LOWENSTEIN SANDLER LLP
> 1251 Avenue of the Americas
> New York, New York 10020
> Telephone: (212) 262-6700
> Facsimile: (212) 262-7402
> lrolnick@lowenstein.com
> mkramer@lowenstein.com
> tredburn@lowenstein.com
> mhampson@lowenstein.com
> *Attorneys for Plaintiffs*

This Court hereby requests that the attorneys for the Plaintiffs in the above-referenced

matter, as officers of this Court, be permitted to orally examine Peter Munk, Ivan Mullany, Feaz Rahim, and Ted Szpargala (the "Ontario Witnesses") and to access, review, select, and request for copying any and all documents and materials identified in this Request for Judicial Assistance.  Upon completion of their review, this Court requests that all copied documents and materials be delivered to the custody and control of the above-identified officers of this Court, who will act as couriers of this Court and deliver those materials directly to me at the following address:

> The Honorable James C. Francis
> United States Magistrate Judge
> Southern District of New York
> 500 Pearl Street
> New York, NY 10007-1312
> United States of America

**D.**     **Ontario Witnesses**

**Mr. Peter Munk** founded Barrick in 1983 and served as its Chairman until his resignation on or about April 30, 2014.  Based on information and belief, Mr. Munk now resides in or near Toronto, Ontario, Canada, and is not represented by counsel in connection with this matter.

**Mr. Ivan Mullany** resides at 1204 Bonnybank Court in Oakville, Ontario, Canada, L6M 1V6, and is represented in the above-referenced action in the United States by Debevoise & Plimpton LLP, the same counsel representing the Defendants.  Through his counsel, Mr. Mullany has advised that he is unwilling to testify or produce documents voluntarily.

**Mr. Feaz Rahim** resides at 35 Marlborough Avenue in Toronto, Ontario, Canada, M5R 1X5, and is represented in the above-referenced action in the United States by Debevoise & Plimpton LLP, the same counsel representing the Defendants.  Through his counsel, Mr. Rahim has advised that he is unwilling to testify or produce documents voluntarily.

**Mr. Ted Szpargala** resides in Toronto, Ontario, Canada, and, according to Defendants' initial disclosures, is represented by James McGuire of Barton LLP.

### E.      Request For Assistance

Pursuant to the Canada Evidence Act, R.S.C. 1985, c. C-5 and the Ontario Evidence Act, R.S.O. 1990, this Court respectfully requests the assistance described herein as necessary to further the interests of justice.    The assistance requested is that the Ontario Superior Court of Justice compel (i) the production of documents by the Ontario Witnesses, and (ii) the taking of oral testimony under oath of the Ontario Witnesses by counsel for Plaintiffs Highfields Capital I LP, Highfields Capital II LP, Highfields Capital III LP, and BG Litigation Recovery I, LLC (collectively, "Plaintiffs"), as described in Section IV of this Letter Rogatory. This Court further requests that the parties in this litigation be granted permission to conduct the oral examinations and require the production of documents under the U.S. Federal Rules of Civil Procedure.

This Court has reviewed the requests and determined that the subjects of anticipated examination and the requested documents are enumerated with particularity and are material to the facts at issue in these actions.

### F.      Purpose for the Oral Examinations (Depositions) and Documents Requested

All testimony, documents, and materials requested will be used in relation to the above-captioned civil lawsuits.

## II.      FACTUAL BACKGROUND

Pursuant to this request, Plaintiffs seek documents and oral testimony from the Ontario Witnesses in the above-captioned civil lawsuits pending in the United States District Court for the Southern District of New York under Section 10(b) (and Rule 10b-5 promulgated pursuant thereto) and Section 20(a) of the Securities Exchange Act of 1934.  Plaintiffs are purchasers, or assignees of purchasers, of Barrick common stock.  Plaintiffs suffered significant investment losses in connection with Defendants' fraud relating to Pascua-Lama, a gold-mining project

-4-

located on the border of Argentina and Chile in the Andes Mountains ("Pascua-Lama," or the "Project").  Plaintiffs allege three core sets of fraudulent misrepresentations by Defendants in connection with Pascua-Lama:  (1) misrepresentations concerning Barrick's compliance with environmental approvals governing Pascua-Lama; (2) misrepresentations concerning Defendants' evaluation of and the effectiveness of Barrick's disclosure procedures and internal controls; and (3) misrepresentations concerning Barrick's impairment testing, the carrying amount of Pascua-Lama recorded by Barrick, and Barrick's reporting of net income and earnings per share.

With respect to environmental misrepresentations, Barrick made multiple false and misleading statements about its compliance with government environmental regulations, the lack of any impact that Barrick's operations was having on the glaciers at Pascua-Lama, and Barrick's purported efforts to protect those glaciers as required by government permits.  Those statements were false.  Several sources, including local Chilean resolutions issued against Barrick, Barrick's own internal monthly project reports, and other internal Barrick presentations disclose that Barrick, among other things, failed to follow dust mitigation procedures, failed to properly implement a glacier monitoring program, improperly stored and disposed of harmful chemicals and other industrial waste, and failed to properly construct a water management system at Pascua-Lama in contravention of Defendants' public statements.  These were not minor oversights, but constituted fundamental conditions of Barrick's environmental regulatory approvals.

Defendants also made multiple misrepresentations concerning their evaluation of and the effectiveness of Barrick's internal controls.  Those statements were false because Barrick's internal monthly project reports for Pascua-Lama revealed that Barrick's disclosure procedures

and internal controls were woefully inadequate to ensure that its public reporting fairly presented an accurate and complete picture of its financial position and its results of operations, and to make sure that material information that Barrick was required to disclose was actually disclosed.

Finally, with respect to accounting misrepresentations, Barrick misleadingly stated that it properly evaluated its assets for impairment losses and that its financial statements were accurate.  However, numerous indicators arose during the relevant period – including Barrick's significant violations of its environmental permits and the Pascua-Lama project deficiencies identified in Barrick's internal monthly progress reports – that the carrying value of Pascua-Lama was impaired at the same time when Barrick represented that it was not impaired. Contrary to its public statements, Barrick did not conduct a proper impairment analysis and failed to timely record an impairment loss for Pascua-Lama.

Preceding these actions was a class action filed on December 12, 2013, on behalf of all purchasers of Barrick common stock who suffered losses as a result of Defendants' fraud. Plaintiffs are class members who, following an independent investigation by their own counsel, exercised their right to file individual actions against Defendants on October 27, 2015.

Plaintiffs seek to recover investment losses they suffered as a result of Defendants' fraud with respect to Pascua-Lama.  A trial date has not yet been set, but fact discovery is to be completed by October 25, 2016.

### III.   <u>EVIDENCE SOUGHT IS MATERIAL TO THESE ACTIONS</u>

Each of the requests seeks information pertaining to material issues in these actions.

Former high-level Barrick employees are well positioned to have knowledge regarding the Project's environmental compliance and the company's weak internal controls during the relevant period. By virtue of their roles at Barrick during the relevant period, Peter Munk, Ivan

Mullany, Feaz Rahim, and Ted Szpargala were each in a position to have direct knowledge of material facts about the Company's environmental obligations, its compliance with those obligations, the Company's internal controls and accounting, and the falsity of Defendants' actionable statements when they were made.

### A.    Peter Munk

Mr. Munk founded Barrick in 1983 and served as its Chairman until his resignation on April 30, 2014.  According to Plaintiffs' preliminary review of documents, including Barrick's public filings and Mr. Munk's public statements, Mr. Munk was in a position to have direct knowledge of the details of the Pascua-Lama Project and the problems that plagued it.  This is evidenced by Mr. Munk's comments on the Pascua-Lama Project in Barrick's public filings with the U.S. Securities and Exchange Commission.  For example, in Barrick's 2010 Annual Report, Mr. Munk noted that the Pascua-Lama Project would "soon be contributing significant quantities of gold to [Barrick's] total production . . . ."  By late 2013, however, Mr. Munk's view of the Project had drastically changed.  In an interview with *The Globe and Mail* published on December 4, 2013, Mr. Munk described the Pascua-Lama Project as a "major fiasco," citing the major cost overruns on, and ultimate suspension of, the Project.  The report further noted Mr. Munk's "domineering" style as Chairman of the Barrick Board, and Mr. Munk described himself as "strong, articulate and pushy."   In addition, Mr. Munk presided over the Board's replacement of former CEO and Defendant Aaron Regent with current CEO Jamie Sokalsky in 2012.  Given Mr. Munk's comments regarding Pascua-Lama and his hands-on management style, there is little doubt that he had knowledge of the events relevant to this litigation.  These requests accordingly seek information from Mr. Munk regarding his knowledge of the Pascua-Lama Project's environmental compliance issues and the causes of the Project's significant cost overruns.

### B.      Ivan Mullany

Defendants have disclosed to Plaintiffs that, during the time period relevant to this litigation, Mr. Mullany served at Barrick as Barrick's Senior Vice President of Capital Projects and Chief Operating Officer.  Defendants have acknowledged that Mr. Mullany is likely to be possession of discoverable information.  Specifically, Defendants have disclosed to Plaintiffs that Mr. Mullany likely possesses information about Barrick's development of the Pascua-Lama Project, including information regarding environmental compliance at the Project; information regarding Barrick's internal controls of financial and other reporting; and information about Barrick's public disclosures regarding the Project.

According to documents filed by the Lead Plaintiffs in the Class Action (defined below), Mr. Mullany's responsibilities at Barrick included management and supervision of internal controls that monitored the Project's efficiency, the reliability of financial reporting and disclosures, and the Project's compliance with laws and regulations.  In particular, Mr. Mullany has knowledge regarding the status of project controls, risks posed by gaps in these processes, and the mitigation of such risks at both a project and corporate level.  All of these issues are relevant to the action.  As directed to Mr. Mullany, therefore, the requests seek relevant testimony and documents with respect to topics such as: (i) deficiencies in the reporting structure at the Project; (ii) Defendants' knowledge of such deficiencies, and internal reports regarding same; (iii) relevant obligations under Sections 302 and 404 Sarbanes-Oxley Act ("SOX 302 and 404"); (iv) internal controls over compliance with environmental laws and obligations and the risk of not meeting environmental commitments; and (v) Mr. Mullany's knowledge of the Project's feasibility.

### C.    Feaz Rahim

According to Defendants' disclosures to Plaintiffs, Mr. Rahim served as Barrick's Vice President of Capital Projects Finance during the relevant period.  Defendants state that Mr. Rahim is likely in possession of relevant information regarding Barrick's internal controls for financial reporting and Barrick's public disclosures regarding the Pascua-Lama Project. According to documents filed by Lead Plaintiffs in the Class Action, during his tenure at Barrick, Mr. Rahim issued Project updates, contributed edits to Barrick's press releases, and was the point-person for financial reporting coordination and submissions.  With respect to Mr. Rahim, therefore, these requests seek relevant testimony and documents regarding: (i) Pascua-Lama Project updates; (ii) edits to Barrick press releases that he helped prepare, and which are relevant to the Project; (iii) financial committee presentations that he helped prepare, and which are relevant to the Project; (iv) the management discussion and analysis ("MD&A") he helped prepare, and which are relevant to the Project; (v) deficiencies in the reporting structure at the Project; (vi) the logistical challenges of the Project; and (vii) his knowledge regarding the feasibility of the Project.

### D.    Ted Szpargala

Defendants have also disclosed Mr. Szpargala as a person likely to be in possession of information relevant to this litigation.  According to Defendants, Mr. Szpargala served as Barrick's Vice President of Assurance and Advisory Services during the relevant time period.  In light of his role at Barrick, Mr. Szpargala is likely to possess vital knowledge regarding the processes and internal controls for Barrick and the Project, including deficiencies in the reporting structure for the Project.  Indeed, according to documents filed by Lead Plaintiffs in the Class Action, Mr. Szpargala was responsible for auditing and reviewing internal control processes at

the Project and at Barrick, including re-estimation reviews, contractor compliance reviews, project management reviews, and project management reporting audits.  Mr. Szpargala was also responsible for communicating issues found within the internal controls audits to those on the project level and to the Individual Defendants.  He was involved in the creation of action plans to track the progress of outstanding controls issues and the management of risks posed by those control weaknesses.  Each of these matters is relevant to issues in the action.  Accordingly, as directed to Mr. Szpargala, the requests seek relevant testimony regarding, among other things: (i) internal controls for Barrick and the Project; (ii) audits of internal controls at a corporate and project level; (iii) any risk mitigation plans associated with internal controls issues as they relate to the Project; (iv) deficiencies in the Project reporting structure; (v) Defendants' SOX 302 and 404 obligations; and (vi) his knowledge regarding the feasibility of the Project.

**IV.    ASSISTANCE REQUIRED**

The Court requests that the Ontario Superior Court of Justice compel the taking of oral testimony under oath of the Ontario Witnesses by counsel for the Plaintiffs and compel the production of documents, as set forth below.

**A.    Definitions and Instructions**

The following definitions and instructions shall apply to the requests for production of documents and oral testimony under oath.

1.    "All," "Any," and "Each" shall each be construed as encompassing any and all. "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request. (Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern District of New York ("Local Rule 26.3"))

-10-

2.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.  (Local Rule 26.3)

3.      "Audit" means all planning, substantive and analytical procedures, testing, and other work performed by Barrick's financial auditors, including, without limitation, year-end audits, quarterly review, filings with the U.S. Securities and Exchange Commission, compilations, regulatory compliance, compliance with the Sarbanes-Oxley Act of 2002, sustainability reporting, due diligence, consulting services, valuation consulting, post-acquisition reviews, and tax services.

4.      "Barrick" or the "Company" refers to Barrick Gold Corporation, any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents or members of the Board of Directors of Barrick, its agents, accountants, advisors, and all other persons acting or purporting to act on its or their behalf.

5.      "Class Action" means *In re Barrick Gold Securities Litigation*, No. 13 Civ. 3851 (S.D.N.Y.).

6.      "Communicate" or "communication" mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).  (Local Rule 26.3)

7.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.  (S.D.N.Y. Local Rule 26.3)

8.      "Defendants" refers to Barrick Gold Corporation, Aaron W. Regent, Jamie C. Sokalsky, Ammar Al-Joundi, Peter Kinver, Igor Gonzales, George Potter, and Sybil E. Veenman, or other person(s) purporting to act on their behalf.  The term "plaintiff" and

"defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.  (S.D.N.Y. Local Rule 26.3)

9.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.  (S.D.N.Y. Local Rule 26.3)

10.     "Environmental Impact Assessments" ("EIA"), "Environmental Impact Reports" ("EIR"), or "Environmental Impact Statements" ("EIS") refers to assessments of the possible impacts that a proposed project may have on the environment, consisting of the environmental, social, and economic aspects.

11.     "Electronically-Stored Information" or "ESI" includes, but is not limited to, the following:

     (a)      all items covered by Fed. R. Civ. P. 34(a)(1)(A);

     (b)      information or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata (e.g., author, recipient, file creation date, file modification date, etc.);

     (c)      internal or external web sites;

     (d)      output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger™ (or similar programs), bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and

     (e)      activity listing of electronic mail receipts and/or transmittals; and any and

all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants (e.g., Palm Pilots), hand-held wireless devices (e.g. BlackBerries), or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

12.    "Employee" means any person who, at any time during the Relevant Period (as defined herein), acted or purported to act on behalf of an entity, or another person or persons including, but not limited to, all present and former officers, directors, executives, partners, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, independent contractors, advisors, and consultants of such entity, person, or persons.

13.    "Meeting(s)" refers to the contemporaneous presence of any natural person (including by telephone) for any purpose, whether or not such presence was prearranged and whether or not the meeting was formal or informal or occurred in connection with some other activity.  "Meeting(s)" also includes presentations.

14.    "Monthly Progress Report" refers to any document that discussed safety, project controls, engineering, contracts and procurement, construction, security, and human resources issues, at Pascua-Lama (defined below).

15.    "Pascua-Lama" refers to the mine located 15,000 feet above sea-level in the Andes Mountains, spanning thousands of acres across the border between Chile and Argentina, which was acquired by Barrick in 1994.

16.    "Pascua-Lama Project" or "Project" refers to Barrick's activities and plans to develop the Pascua-Lama mine.

17.    "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.  (Local Rule 26.3)

-13-

18. "Relevant Period" means May 7, 2009 through January 30, 2014, unless otherwise indicated.

19. "Representative" refers to any present or former director officer, partner, agent, counsel, employee or other person acting or purporting to act on the behalf of a corporation, professional corporation, firm, partnership, proprietorship, association, business entity, or other person.

20. "Risk Exposure Reports" refers to any review conducted by, or on behalf of Barrick, regarding any risks that the Project was facing.

21. "These actions" means *Highfields Capital I LP, et al. v. Regent, et al.*, No. 15-8465 (S.D.N.Y.) and *BG Litigation Recovery I, LLC v. Barrick Gold Corporation, et al.*, No. 15-8457 (S.D.N.Y.).

22. "You" or "Your" means each of the Ontario Witnesses (Peter Munk, Ivan Mullany, Feaz Rahim, and Ted Szpargala), respectively, and any and all of his agents, representatives, consultants, contractors, investigators, attorneys, and any other Person or entities acting or purporting to act on behalf of the Foreign Third Party.

23. Use of the singular form of any word includes the plural, and vice versa. (S.D.N.Y. Local Rule 26.3).

24. Use of the feminine gender includes the masculine gender, and vice-versa.

25. The present tense includes the past and future tenses, and vice versa.

26. The fact that a document is produced by another party or non-party does not relieve You of the obligation to produce Your copy of the same document, even if the two documents are identical in all respects.

27. These requests cover and seek Documents and Communications from any and all

-14-

times.

**B.     Oral Examinations (Depositions)**

The Court requests the oral testimony under oath of the Ontario Witnesses to be taken by counsel for Plaintiffs.  If local law does not permit the use of oath or affirmation, then the evidence should be taken in the normal manner permitted by law.   It is requested that the examination be conducted in person and by video and stenographic means, and continue from day to day until completed.  In connection with the taking of testimony of the witnesses, counsel for Plaintiffs has this Court's permission to refer the witness to documents previously produced or available in the U.S. proceedings.

**General Requests – The subjects of the examinations of each of the witnesses may include:**

1.     The witness's employment with Barrick.

2.     The witness's recollection of his responsibilities concerning the Project.

3.     The witness's recollection of his interactions with other Barrick employees, including senior executives, the Defendants, and individuals with responsibility for the Project.

4.     The witness's recollection of his interactions with any government entity in relation to the Project.

5.     The witness's familiarity with any management practices at the Project.

6.     The witness's familiarity with any challenges facing the Project.

7.     The witness's familiarity with any risks associated with the Project.

8.     The witness's familiarity with the feasibility of the Project, to the extent it concerns internal controls or environmental compliance.

9.     Any documents the witness intends to produce.

**Requests Specific To Mr. Munk – The subjects of the examination specific to Mr. Munk may include:**

1.      Mr. Munk's familiarity with any discussions at Barrick Board meetings during the Relevant Period, including, but not limited to:

      (a)      periodic reports on progress on the Pascua-Lama Project;

      (b)      any votes that may have been held in connection with the Project; and

      (c)      any concerns that Mr. Munk or any other person in attendance may have specifically raised regarding the Project's viability.

2.      The basis for Mr. Munk's conclusion in December 2013 that the Pascua-Lama Project was a "major fiasco."

3.      Mr. Munk's familiarity with the reasons for the Barrick Board's decision to replace former CEO Aaron Regent with current CEO Jamie Sokalsky.

**Requests Specific To Mr. Mullany – The subjects of the examination specific to Mr. Mullany may include:**

1.      Mr. Mullany's familiarity with internal controls for Barrick and the Project, including, but not limited to:

      (a)      the creation of the internal controls platform(s);

      (b)      any internal controls standards at Barrick or the Project;

      (c)      the management, monitoring, and maintenance of internal controls;

      (d)      any changes made to internal controls during the Relevant Period;

      (e)      any reviews or audits of internal controls or the financial reporting structure;

      (f)     any risks and associated risk mitigation plans;

      (g)     any weaknesses in internal controls; and

      (h)     any deficiencies in the reporting structure for the Project.

2.     Mr. Mullany's familiarity with any meetings or presentations concerning internal controls and financial reporting at Barrick and the Project.

3.     Mr. Mullany's familiarity with the July 2011 Risk Exposure Report, Pascua-Lama Project Update Reports, Monthly Progress Reports, and any other report(s) relating to internal controls, financial reporting, and environmental compliance at Barrick and the Project, including, but not limited to:

      (a)     the creation of the report(s);

      (b)     the maintenance, updating, or editing of the report(s);

      (c)     the submission of report(s) to any government or government agency; and

      (d)     the distribution of any report(s) to senior executives, the Defendants, the Board of Directors of Barrick, and individuals with responsibility for the Project.

4.     Mr. Mullany's familiarity with environmental commitments and compliance at the Project, including, but not limited to:

      (a)     the creation of the environmental conditions;

      (b)     the maintenance, updating, or editing of the environmental conditions;

      (c)     compliance inspections, evaluations, or reviews;

      (d)     any violations of the environmental conditions;

      (e)     any risks and associated risk mitigation plans;

      (f)     any measures taken to remain environmentally compliant with regulations; and

-17-

(g)    any communications or interactions with any government or government agencies regarding the environmental conditions or environmental compliance.

5.    Mr. Mullany's familiarity with permit commitments or permit compliance at the Project.

6.    Mr. Mullany's familiarity with any meetings or presentations relating to permit commitments or permit compliance at the Project, including, but not limited to, environmental compliance.

7.    Mr. Mullany's familiarity with the water management system, dust control program, and glacier monitoring program at the Project, including, but not limited to:

(a) the designs, procedures, or protocols as set out in EIA, EIR, and EIS;

(b) any changes made to the designs, procedures, or protocols during the Relevant Period;

(c) any challenges associated with these systems or programs;

(d) any risks or risk mitigation plans; and

(e) any failure(s) of these systems or programs.

8.    Mr. Mullany's familiarity with any sanctions or fines levied against Barrick in relation to the Project.

9.    Mr. Mullany's familiarity with any Barrick press releases relating to the Project.

**Requests Specific To Mr. Rahim – The subjects of the examination specific to Mr. Rahim may include:**

1.    Mr. Rahim's familiarity with internal controls for Barrick and the Project, including, but not limited to:

(a)    the creation of the internal controls platform(s);

   (b)  any internal controls standards at Barrick or the Project;

   (c)  the management, monitoring, and maintenance of internal controls;

   (d)  any changes made to internal controls during the Relevant Period;

   (e)  any reviews or audits of internal controls or the financial reporting structure;

   (f)  any risks and associated risk mitigation plans;

   (g)  any weaknesses in internal controls; and

   (h)  any deficiencies in the reporting structure for the Project.

2.  Mr. Rahim's familiarity with Pascua-Lama Project Update Reports, Monthly Progress Reports, the management discussion and analysis ("MD&A"), and any other report(s) relating to internal controls and financial reporting at Barrick and the Project, including, but not limited to:

   (a)  the creation of the report(s);

   (b)  the maintenance, updating or editing of the report(s);

   (c)  the submission of any report(s) to any government or government agency; and

   (d)  the distribution of any report(s) to senior executives, the Defendants, the Board of Directors of Barrick, and individuals with responsibility for the Project.

3.  Mr. Rahim's familiarity with financial committee presentations and any other presentations or meetings relating to internal controls and financial reporting at Barrick and the Project.

4.  Mr. Rahim's familiarity with any Barrick press releases relating to the Project.

5.  Mr. Rahim's familiarity with any permit commitments or permit compliance at

the Project.

6.     Mr. Rahim's familiarity with any sanctions or fines levied against Barrick in relation to the Project.

**Requests Specific To Mr. Szpargala – The subjects of the examination specific to Mr. Szpargala may include:**

1.     Mr. Szpargala's familiarity with internal controls for Barrick and the Project, including, but not limited to:

     (a)     the creation of the internal controls platform(s);

     (b)     any internal controls standards at Barrick or the Project;

     (c)     the management, monitoring, and maintenance of internal controls;

     (d)     any changes made to internal controls during the Relevant Period;

     (e)     any reviews or audits of internal controls or the financial reporting structure;

     (f)     any risks and associated risk mitigation plans;

     (a)     any weaknesses in internal controls; and

     (b)     any deficiencies in the reporting structure for the Project.

2.     Mr. Szpargala's familiarity with any internal controls or financial reporting reviews or audits conducted at Barrick or the Project, whether performed internally or by independent consultants, and any reports, presentations, or meetings, resulting from such reviews.

3.     Mr. Szpargala's familiarity with any action plans or mitigation plans for any internal control weaknesses or deficiencies.

4.     Mr. Szpargala's familiarity with the July 2011 Risk Exposure Report; Pascua-

Lama Project Update Reports, Monthly Progress Reports, and any other report(s) relating to internal controls and financial reporting at Barrick and the Project.

      5.      Mr. Szpargala's familiarity with any permit commitments or permit compliance at the Project.

      Finally, it is requested that the following counsel of record for the parties be notified of the time and place for the examinations of the Foreign Third Parties within a reasonable time prior to such examinations:

| *Counsel of Record for Plaintiffs:* | *Counsel of Record for Defendants:* |
| --- | --- |
| Lawrence M. Rolnick<br>Marc B. Kramer<br>Thomas E. Redburn, Jr. (*pro hac vice*)<br>Michael J. Hampson<br>LOWENSTEIN SANDLER LLP<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: 212.262.6700<br>Facsimile: 212.262.7402<br>lrolnick@lowenstein.com<br>mkramer@lowenstein.com<br>tredburn@lowenstein.com<br>mhampson@lowenstein.com | Bruce E. Yannett<br>Elliot Greenfield<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York 10022<br>Tel: (212) 909-6000<br>Facsimile: (212) 909-6836<br>beyannett@debevoise.com<br>egreenfield@debevoise.com |

**C.      Documents to be Produced**

      The Court requests that the following document requests be directed to each of the Ontario Witnesses and that each be compelled to produce copies of the following documents:

      1.      Documents sufficient to explain Your role(s) at Barrick.   This request includes documents constituting or concerning any agreement, contract, understanding, engagement, retention, reimbursement, expense, fee or other relationship between You and Barrick.

      2.      Documents sufficient to identify the persons at Barrick that You communicated

with during the Relevant Period.

3.      All documents You provided to, or prepared for, Barrick relating to the Project, including but not limited to, those relating to construction and development plans, proposals, and estimates, compliance with any environmental laws, regulations, or commitments, and any logistical, operations, or environmental challenges.

4.      All documents Barrick provided to You relating to the Project, to the extent that they concern internal controls or environmental compliance, including but not limited to such documents that relate to construction and development plans, feasibility, compliance with any environmental laws, regulations, or commitments, and any logistical, operational, or environmental challenges.

5.      All documents concerning any and all discussions with Barrick or any of its employees or representatives, relating to the Project.

6.      All documents concerning any and all meetings with Barrick or any of its employees or representatives, relating to the Project.

7.      All documents concerning environmental compliance at the Project.

8.      All documents concerning internal controls at Barrick and the Project.

9.      All documents concerning accounting or the analysis of an impairment at Barrick and the Project.

10.      All documents concerning any audits performed that relate to the Project.

11.      All documents concerning challenges or difficulties at the Project.

12.      All documents concerning the feasibility of the Project, to the extent they concern internal controls or environmental compliance.

13.      All documents concerning Your views regarding the outlook, prospects, or

potential for success of the Project.

14.     All documents and communications concerning Your departure from Barrick.

## V.     RECIPROCITY AND REIMBURSEMENT

### A.     Reciprocity

This Court respectfully expresses its willingness to provide reciprocal judicial assistance

to the Ontario Superior Court of Justice.

### B.     Reimbursement for Costs

The fees and costs incurred in executing this request that are reimbursable pursuant to

applicable law will be borne by Plaintiffs in care of Counsel at the address below:

> Lawrence M. Rolnick
> Marc B. Kramer
> Thomas E. Redburn, Jr.
> Michael J. Hampson
> LOWENSTEIN SANDLER LLP
> 1251 Avenue of the Americas
> New York, New York 10020
> Telephone: (212) 262-6700
> Facsimile: (212) 262-7402
> lrolnick@lowenstein.com
> mkramer@lowenstein.com
> tredburn@lowenstein.com
> mhampson@lowenstein.com
> *Attorneys for Plaintiffs*

## VI.     CONCLUSION

This Court, in the spirit of comity and reciprocity, hereby requests international judicial

assistance from the Ontario Superior Court of Justice in the form of this Letter Rogatory seeking

the oral examination (deposition) and the production of documents, as described herein.

Please accept the assurance of our highest esteem.

-23-

Dated:  New York, New York

_____  ___, 2016

_____
Hon. James C. Francis
United States Magistrate Judge